EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

FILED
MAY 02 2018
PATRICK KEANEY
Clerk, U.S. District Court
By_____
Deputy Clerk

| In the Matter of the Search of | |
|---|---|
| 1) Samsung Cellular Telephone, Model: SM-J327P, ESN: 089168896909770068; 2) Samsung Galaxy Cellular Telephone, Model: SM-J327T1, IMEI: 354256098194103; 3) Moto Cellular Telephone, Model: XT1765, IMEI: 355674089353829; and 4) LG Cellular Telephone, Model: LM-X210MA, IMEI: 356233092705208 CURRENTLY IN THE POSSESSION OF THE DRUG ENFORCEMENT ADMINISTRATION, McALESTER RESIDENT OFFICE LOCATED AT 100 AIRPORT ROAD, MCALESTER, OKLAHOMA | Case No. **MJ-18-063-KEW** |

## APPLICATION FOR SEARCH WARRANT

I, Brian F. Epps, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Eastern District of Oklahoma *(identify the person or describe property to be searched and give its location)*:

   SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

   SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 841(a)(1) and 846 and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Brian F. Epps
Special Agent
Drug Enforcement Administration

Sworn to before me and signed in my presence.

Date: May 2, 2018

_____
Judge's signature
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and state: Muskogee, Oklahoma

# AFFIDAVIT

I, Brian F. Epps, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property (electronic devices), described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since December 2003. During my employment with the DEA I have specialized in investigations involving narcotics trafficking and money laundering. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have participated in and supported numerous narcotic investigations involving the illegal manufacture, possession, sale, distribution and importation of many different types of controlled substances, as well as methods used to finance drug transactions and the laundering of proceeds received from drug trafficking.

3. Prior to my employment with the DEA as a Special Agent, I was employed by the Denison, Texas, Police Department for approximately nine and one-half (9 ½) years as a licensed peace officer in the state of Texas. I was assigned as a narcotics investigator for four years while employed by the Denison Police Department.

4. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from discussions with experienced law enforcement officers, including Special Agents of the DEA and other State and

Local law enforcement agencies. Based on my training, experience and on my participation in this investigation, I know the following:

a. Methamphetamine is a Schedule II controlled substance, and that the manufacture, distribution or possession with intent to distribute and conspiracy to commit said acts are violations of Title 21, United States Code, Sections 841(a)(1) and 846.

b. Drug couriers and traffickers commonly use multiple methods of communication to arrange transactions and conduct business. Cellular telephones and other devices which access the Internet are frequently used to send and receive messages over long distances;

c. Drug traffickers commonly use cellular phones or other electronic devices to communicate with users and sellers of illegal controlled substances, negotiate prices for illegal controlled substances, solicit sales of illegal controlled substances, facilitate transactions where illegal controlled substances are sold, and photograph or video record money and drugs obtained through illegal means.

d. Drug traffickers, including couriers transporting drugs, use Global Positioning System (GPS) devices to assist them in navigation from locations where they start a trip to transport drugs to the intended destination where they deliver the drugs, which is often a location thousands of miles from where their trip started;

e. Drug traffickers frequently maintain records, receipts, notes, ledgers, and other documents relating to the transportation, ordering, sale and distribution of controlled substances; drug traffickers commonly consign controlled substances to their clients and transporters; that the aforementioned records, receipts, notes, ledgers, and other documents are frequently stored on, maintained by or accessed

using cellular telephones or other electronic devices where the traffickers have ready access to them.

 f. Electronic files can be easily moved from one cellular phone or electronic storage medium to another. Therefore, electronic files downloaded to, or created on one cellular phone can be copied to, or transferred to, most any other cellular phone or storage medium.

 g. Drug traffickers amass proceeds from the sale of drugs and that the drug traffickers attempt to legitimize these profits; to accomplish these goals, drug traffickers utilize domestic banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other forms of online virtual currency; drug traffickers often utilize cellular telephones to engage in these activities related to legitimizing profits, and proof of these activities is often preserved on cellular telephones.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The property to be searched is:

 1) Samsung Cellular Telephone, Model: SM-J327P, ESN: 089168896909770068;

 2) Samsung Galaxy Cellular Telephone, Model: SM-J327T1, IMEI: 354256098194103;

 3) Moto Cellular Telephone, Model: XT1765, IMEI: 355674089353829; and

 4) LG Cellular Telephone, Model: LM-X210MA, IMEI: 356233092705208.

Hereinafter referred to as the "Devices" (Attachment A). The Devices are currently in the custody of the Drug Enforcement Administration McAlester Resident Office located at 100 Airport Road in McAlester, Oklahoma, within the Eastern District of Oklahoma.

7.      The requested warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      On April 24, 2018, at approximately 9:15 A.M., Oklahoma Highway Patrol Trooper Cody Hyde stopped a black 2004 Dodge Durango traveling eastbound on Interstate 40 near Mile Marker 297, within in the Eastern District of Oklahoma. The vehicle was traveling 81 MPH in a 70 MPH zone. The driver provided Trooper Hyde with at California Identification Card identifying him as **Luis Lopez ARCE. ARCE** told Trooper Hyde he recently purchased the vehicle and provided a vehicle registration and proof of insurance dated April 22, 2018. **ARCE** sat inside Trooper Hyde's vehicle while Trooper Hyde issued a warning citation. **ARCE** identified the passenger of the Dodge as his cousin, Abel, but did not know his last name. **ARCE** further told Trooper Hyde they were traveling to Arkansas to find work in the vegetable fields, but did not know to what city they were traveling. While issuing the warning citation, Trooper Hyde found **ARCE** was driving on a suspended California driver's license.

9.      At approximately 9:26 A.M., Trooper Hyde returned to the vehicle to speak with the passenger who produced a Mexican passport identifying him as **Abel Eduardo CRISTERNA-GONZALEZ** of Sinaloa, Mexico. **CRISTERNA-GONZALEZ** spoke broken English and identified **ARCE** as a friend, but did not know his name. **CRISTERNA-GONZALEZ** told Trooper Hyde they were traveling to Nashville, Tennessee. During the initial contact with **ARCE** and again during the contact with **CRISTERNA-GONZALEZ**, Trooper Hyde observed two

4

cellular telephones (Samsung Model: SM-J327P and Samsung Model: SM-J327T1) in the center cup holder as well as a cellular telephone held by **CRISTERNA-GONZALEZ** (LG Model: LM-X210MA).

10. At approximately 9:28 A.M., Trooper Hyde returned to his vehicle, continued to speak with **ARCE** and completed the warning citation. Trooper Hyde asked **ARCE** if they were traveling anywhere other than Arkansas because **CRISTERNA-GONZALEZ** told Trooper Hyde they were traveling to Tennessee. **ARCE** again told Trooper Hyde they were traveling to Arkansas, but **ARCE** did not know to what city.

11. At approximately 9:31 A.M., Trooper Hyde returned the travel documents and a copy of the warning citation to **ARCE** and told him he needed to clear up the issue with his driver's license. **ARCE** asked if the citation was going on his record and stated he guessed he got off easy. As **ARCE** opened the door and stepped out of Trooper Hyde's vehicle, Trooper Hyde asked if **ARCE** minded answering a few more questions. **ARCE** agreed. Trooper Hyde asked if there were any weapons in the vehicle to which **ARCE** stated there was not. Trooper Hyde asked if there were any drugs in the vehicle. **ARCE** laughed and said "no." Trooper Hyde asked if he could search the vehicle. **ARCE** replied, "of course, there's nothing in there." Trooper Hyde approached **CRISTERNA-GONZALEZ** and asked him if there were any weapons or drugs in the vehicle. **CRISTERNA-GONZALEZ** stated there was not and also agreed to a consent search.

12. Trooper Daran Koch arrived to assist Trooper Hyde with the search. During the search, Trooper Hyde noticed a spray can of black undercoating, a ratchet with a 10mm socket and a Phillips screwdriver sitting in the cargo area beside a toolbox. Both Troopers noticed an aftermarket light bar that appeared to be coated with the same undercoating and attached to the top of the cab. Both Troopers further found the 10mm socket fit the mounting bolts to the light bar

and mismatched Phillips screws in the light bar. The Troopers used the tools found in the cargo area to open the light bar and found four black-taped bundles concealed within the light bar. Each bundle contained a crystalline substance consistent with methamphetamine. The substance also field tested positive for the presence of methamphetamine.

13. Trooper Hyde found a single suitcase in the back seat. **ARCE** claimed the suitcase and everything in the suitcase. A small digital scale and a cellular telephone (Moto Model: XT1765) were found in the suitcase. Additional items located in the vehicle were as follows:

   a. A Dolex Dollar Express Client Receipt dated April 20, 2018, in the amount of $965.00 showing the sender as **CRISTERNA-GONZALEZ** in Phoenix, Arizona, and the recipient as Ma Elena Reynaga Rangel in Tijuana, Baja California.

   b. A Dolex Dollar Express Client Receipt dated April 17, 2018, in the amount of $1,000.00 showing the sender as Ahlan Wasohlan Aguirre Gonzalez in Glendale, Arizona, and the recipient as Rodolfina Garcia Garcia in Tijuana, Baja California.

   c. A Wells Fargo customer account application dated April 18, 2018, showing an account opened in the name of Abel C Gonzalez.

   d. A Western Union receipt dated April 15, 2018, showing the sender as **CRISTERNA-GONZALEZ** and the recipient as Aleyda Sugey Valdez-Jacobo in Culiacan, Sinaloa.

   e. A Mesa, Arizona, Home Depot receipt dated March 8, 2018, for a 100-piece ratchet/wrench set.

   f. A sale contract dated October 4, 2017, for the 2004 Dodge Durango showing the buyer as Unique Auto Sales with the buying representative as Ahlan Aguirre Gonzalez.

14. Both **ARCE** and **CRISTERNA-GONZALEZ** were arrested for Trafficking Methamphetamine and transported to the Sequoyah County Jail. SA Brian Epps and TFO Jerad McKee attempted to interview **ARCE**. When **ARCE** was brought into the interview room, he immediately observed SA Epps' badge and stated "nope" before immediately walking back out of the room with the jailer.

15. During and following the traffic stop, Trooper Koch and Trooper Hyde noticed each of the two cellular telephones found in center cup holder and the telephone possessed by **CRISTERNA-GONZALEZ** received several messages and/or telephone calls following the stop.

16. On April 24, 2017, Trooper Hyde transferred custody of the four packages of suspected methamphetamine, the cellular telephones and documents found in the vehicle to SA Brian Epps and TFO McKee. Each of the taped bundles were of approximately the same size and packaged in a similar manner. SA Epps found the total weight of the packages to be approximately 2083 grams.

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone

numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may include global positioning system ("GPS") technology for determining the location of the device, and often include GPS applications so the device can be used in navigation.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.

These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.  Based on my training, experience, and research, I know that the cellular telephones described in Attachment A have capabilities that allow them to serve as a wireless telephone, digital camera, GPS navigation device, and to browse the Internet. In my training and experience, examining data stored on these types of devices can uncover evidence described in Attachment B, and among other things, evidence that reveals or suggests who possessed or used the device.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

  team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Brian F. Epps
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on the 2nd day of May 2018.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

PROPERTY TO BE SEARCHED:

1) Samsung Cellular Telephone, Model: SM-J327P, ESN: 089168896909770068;

2) Samsung Galaxy Cellular Telephone, Model: SM-J327T1, IMEI: 354256098194103;

3) Moto Cellular Telephone, Model: XT1765, IMEI: 355674089353829; and

4) LG Cellular Telephone, Model: LM-X210MA, IMEI: 356233092705208.

CURRENTLY IN THE POSSESSION OF THE DRUG ENFORCEMENT ADMINISTRATION, McALESTER RESIDENT OFFICE LOCATED AT 100 AIRPORT ROAD, MCALESTER, OKLAHOMA

## ATTACHMENT B

1.  All records on the Devices as described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and 18 U.S.C. 1956 which involve **Luis Lopez ARCE and Abel Eduardo CRISTERNA-GONZALEZ** and others as yet identified, including:

    a.  lists of customers/associates and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording **ARCE, CRISTERNA-GONZALEZ,** or other co-conspirators schedule or recent travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records.

    f.  communications including text messages or recorded voice messages saved on the Devices, as well as call history, stored telephone numbers and other notes ;

    g.  photographs or videos which may identify co-conspirators or locations;

    h.  stored addresses or locations within mapping software that may identify locations recently visited.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.